(C. D. 2464)

Norman G. Jensen, Inc. *v.* United States

United States Customs Court, First Division

(Decided June 22, 1964)

*Wallace & Schwartz* (*Joseph Schwartz, E. Thomas Honey, Earl R. Lidstrom,* and *Barnes, Richardson & Colburn* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Morris Braverman, Mollie Strum,* and *Samuel D. Spector,* trial attorneys), for the defendant.

1

Before OLIVER and WILSON, Judges

OLIVER, Chief Judge: The merchandise involved herein consists of glass pellets of three different sizes. In his classification thereof, the collector invoked two different tariff provisions. The smallest size, i.e., 1.6 millimeters, was classified under the provision in paragraph 231 of the Tariff Act of 1930, as modified by T.D. 54108, for frostings, with a dutiable assessment at the rate of 36 per centum ad valorem. The other two sizes, 4 millimeters and 8 millimeters, were assessed with duty at the rate of 42½ per centum ad valorem, under the provision in paragraph 218(a), as modified by T.D. 52739 and T.D. 52820, for "Biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, * * * whether used for experimental purposes in hospitals, laboratories, * * * or otherwise * * * finished or unfinished, wholly or in chief value of glass."

Plaintiff claims that all of the merchandise in question is properly classifiable under the provision in paragraph 230(d) of the Tariff Act of 1930, as modified by T.D. 54108, for "manufactures of glass, or of which glass is the component of chief value, not specially provided for," and dutiable at the appropriate rate of duty, depending on the date of entry of the merchandise or the date of withdrawal from warehouse.

Three witnesses testified. All of them appeared on behalf of plaintiff, and each of them is associated with the Minnesota Mining & Manufacturing Co. of St. Paul, Minn., the importer of the present merchandise. Their combined uncontradicted testimony, coupled with samples of the present merchandise and certain illustrative exhibits, will support the following summation.

The Minnesota Mining & Manufacturing Co. developed a mechanical plating system that introduced a new technical approach for the protection of metal parts from corrosion. It is generally applied "to protect springs, nuts, and bolts, steel parts from rusting." (R. 5.) The glass pellets in question are used as components of the so-called impact media employed in the mechanical plating system.

In the commercial application of this plating system, the metal parts or articles to be plated are mixed, with an equal weight of chunks of glass and glass spheres or pellets, of various shapes and sizes, in a horizontal tumbling barrel, having eight sides and equipped with a rubber lining. Use of a tumbling barrel permits plating of parts and articles in bulk. After the metal parts or articles and the glass components are loaded into the tumbling barrel, special chemicals in block form and the coating material in the form of finely divided powder—zinc, cadmium, or tin—are added. The chemicals promote adherence of the metal coating and the uniform distribution thereof. Thickness of the coating is controlled by the amount of metal powder. The glass components, with the metal articles or parts to be plated,

provide the necessary mechanical action "and the whole charge [is] tumbled around as in a burnishing operation" (R. 13) as the coating material is welded to the surface of the pieces being plated. In addition to the glass pellets in question (plaintiff's exhibits 1, 2, and 3), the impact media consists of "very fine spheres of glass which are much smaller than those exhibits," plus a third component, consisting of square chunks of glass with corners and edges rounded. The typical plating operation uses 500 pounds of impact media, of which 50 to 60 per centum consists of glass pellets, like those involved herein. The combination of glass components supplies the impact energy in the mechanical plating operation. The size of the sphere or particles determines the amount of energy to be transferred. Normal procedure is to use a mixture of different sizes to provide for contacting the smallest radius and at the same time to contact a mass large enough for effective transmission of energy.

The glass pellets under consideration are exclusively used as components of the impact media in this plating system. Although the sizes stated on the invoices may be regarded as standard, they are not actual sizes. A tolerance of plus or minus of 15 to 20 per centum is allowed. There are no specific requirements concerning desirable qualities of the glass. It is sufficient that the glass "falls within the general, the accepted definition of glass, itself." (R. 19.) Crystal clarity is not essential; opaqueness is acceptable. As the plating operation is performed at room temperature, the glass need not be heat resistant. The only condition is that the glass pellets have a smooth surface. Report of the chemical analysis of the present merchandise (defendant's exhibit A) discloses that the pellets in sizes of 1.6 millimeters and 4 millimeters (exhibits 1 and 2, respectively) are composed of glass that is more than 80 per centum silica and lead oxide, and that the pellets of the 8-millimeter size are composed of glass that is approximately 75 per centum silica. The remaining elements in the glass, composing all three sizes of the glass pellets, consist of five different classes of oxides, each in negligible quantity.

The glass spheres under consideration are not frostings. Testimony of the manager of research and development in the inorganic department of the reflective products division of the importing corporation shows that frostings are decorative materials, of particle size, much smaller than the present merchandise, and having the general appearance of crushed glass. Frostings are usually applied to a pretreated gluey surface and impart a sparkling or frosty effect. Use of frostings is illustrated on a greeting card (plaintiff's exhibit 5). Plaintiff's evidence is supported by the definition of "frosting" as "coarsely powdered glass, etc., used for decorative work; usually in the plural," which appears in Funk & Wagnalls Standard Dictionary. The articles in question are glass spheres which cannot be considered as frostings, either in their manner of use or in their general appearance.

Accordingly, the collector's classification of the pellets, 1.6 millimeters in size, under the provision for frostings in paragraph 231, as modified, is overruled.

Counsel for defendant, arguing in his brief, to support classification of the present merchandise as metallurgical glassware, points to testimony, elicited on cross-examination of the technical and production manager of the metal plating system involved in the present controversy, where the witness stated that "we are dealing with metals here so in the broad sense, you can talk of a metallurgical process." (R. 25.) The witness' statement followed his testimony that it would be unusual to regard this plating process as metallurgical and that he would not use the term in connection therewith. We do not view, and we cannot consider, the witness' testimony as an admission that the pellets in question are metallurgical glassware.

In the volume, "GENERAL METALLURGY" by Hofman, cited in defendant's brief, metallurgy is defined as "the art of extracting metals from their ores and refining and fashioning them for use in metal industries." Funk and Wagnalls New Standard Dictionary defines "metallurgy" as follows:

The art or science of economically extracting a metal or metals from ores, as by smelting, reducing, refining, alloying, etc. In recent times, it has led to developments in chemistry, and, like that science, it has benefited by the discovery of electricity and the use of the microscope. In process, it is either mechanical or chemical.

The Encyclopaedia Britannica, volume 15, states that the term, "metallurgy," is applied "by modern metallurgists to the structure of metals and of alloys, to their constitution and its relation to their physical properties and to the thermal and mechanical treatment of metals."

Under the cited authoritative references, the glassware in question is not metallurgical. In their exclusive use, the glass pellets involved herein supply force and energy, as essential components of the impact media, in the tumbling operation employed in the plating system. There is no treatment of metals. The function of the glass pellets is entirely mechanical, acting as "little hammers" (R. 13) that pound particles of the coating material to the surface of the metal parts or articles being plated.

Classification under paragraph 218(a), as modified, *supra*, is predicated on the use of merchandise, and such use is the chief use for laboratory and scientific purposes. *W. J. Byrnes & Co., Inc.* v. *United States*, 43 Cust. Ct. 322, Abstract 63300; *Walco Bead Co., Inc.* v. *United States*, 28 Cust. Ct. 369, Abstract 56282; *Eimer & Amend* v. *United States*, 6 Cust. Ct. 584, Abstract 45578. The metal plating system under discussion is not a laboratory activity. On the contrary, it has wide commercial and industrial usage. As a matter of fact, in in-

dustrial installations, where the plating system is utilized, "hundreds and thousands of pounds" of glass pellets, such as those in controversy, are used to "plate tons of parts per day." (R. 52.) No chemical reaction occurs from the use of these glass pellets. By their sole use—which is a commercial or industrial use—as impact media in the metal plating system, the glass pellets under consideration are not within the purview of said modified paragraph 218(a).

Support for the conclusion is found in the "SUMMARIES OF TARIFF INFORMATION," 1948, volume 2, part 2, which was prepared pursuant to a resolution of the Ways and Means Committee of the House of Representatives, adopted July 25, 1947, and embodies commodity summaries of tariff information on 1,800 dutiable items, and includes for the various commodities information pertinent "to an understanding of the conditions of competition between imports and domestic production." Referring to the provisions of paragraph 218(a), as modified, *supra*, the publication contains the following comment:

Description and uses.—This summary covers glassware used chiefly for laboratory and scientific purposes. The number and variety of such glassware is large; typical items are beakers, flasks, graduates, thermometers, condensers, and syringes. The ware is made largely of borosilicate glass, which is highly resistant to temperature changes and the dissolving action of chemical solutions. Ware that is not exposed to temperature shock or to corrosive chemicals is made of hard soda-lime glass or, in some instances, of soft lead glass.

Plain pieces of laboratory glassware are made in a hot-metal (molten-glass) shop, where the molten glass is formed into articles like beakers and flasks by blowing, and into heavier articles by pressing. More complicated pieces, such as condensers and distilling flasks, are made in a cold-metal shop, where tubing and various other articles previously formed from molten-glass are heated over a flame and further fabricated. Some ware is also calibrated. The fabricating is performed almost entirely by hand by highly skilled labor.

Cases cited in defendant's brief were controlled by a factual situation, showing chief use for the merchandise involved therein for scientific purposes. *Ohio Thermometer Co.* v. *United States*, 61 Treas. Dec. 1597, Abstract 19852; *United States* v. *Schaeffer & Budenburg Corp.*, 18 CCPA 338, T.D. 44587. In this case, the glass pellets in question are commercial commodities that are exclusively used for industrial purposes. Hence, the cited cases have no control over the disposition of the present one.

Consideration has been given to all of the authorities—judicial and legislative—referred to in the briefs filed by counsel for the respective parties. The discussion herein refers only to such authorities as are considered necessary to support the reasoning followed and the conclusions reached.

Since the glass pellets under consideration are not specifically provided for, and being concededly composed of glass that is "not blown or partly blown in the mold or otherwise, or colored, cut, engraved,

etched, frosted, gilded, ground, painted, printed in any manner, sand-blasted, silver stained or decorated, or ornamented in any manner" (R. 16–17), they are, therefore, properly relegated for classification under the residuary provision in paragraph 230(d), as modified, *supra*, for manufactures of glass, not specially provided for.

On the basis of the present record and for all of the reasons herein-above set forth, we hold the glass pellets in question, as heretofore identified, to be properly classifiable under the provision in said modi-fied paragraph 230(d), for "manufactures of glass, or of which glass is the component of chief value, not specially provided for," and du-tiable thereunder at the appropriate rate of duty, depending on the date of entry of the merchandise or the date of withdrawal from warehouse, as claimed by plaintiff.

The protests are sustained, and judgment will be rendered accordingly.